UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

WAYNE SENVILLE; DONALD HORENSTEIN;    :
VERMONT PUBLIC INTEREST RESEARCH      :
GROUP, INC.; FRIENDS OF THE EARTH,    :
INC.; SIERRA CLUB, INC.; and          :
CONSERVATION LAW FOUNDATION,          :
                                      :
    Plaintiffs,                       :
                                      :
        v.                             :   Case No. 2:03-cv-279
                                      :
MARY E. PETERS in her official        :
capacity as Administrator of the      :
Federal Highway Administration        :
(FHWA), and DAWN TERRILL, in her      :
official capacity as Secretary of     :
the Vermont Agency of                 :
Transportation (VTrans),              :
                                      :
    Defendants.                       :

**MEMORANDUM and ORDER**

    Defendants Mary E. Peters, Administrator of the Federal Highway Administration ("FHWA"), and Dawn Terrill, Secretary of the Vermont Agency of Transportation ("VTrans") have timely moved pursuant to Federal Rule of Civil Procedure 59(e) to alter or amend the Court's Amended Opinion and Order dated May 24, 2004. Final judgment was entered in the case on March 11, 2005.

    A Rule 59(e) motion to alter or amend a judgment may be granted to correct clear legal error, encompassing mistakes of law or fact, or to prevent manifest injustice. *See Munafo v. Metro. Transp. Auth.*, 381 F.3d 99, 105 (2d Cir. 2004). "The 'narrow aim' of Rule 59(e) is 'to mak[e] clear that the district court possesses the power to rectify its own mistakes in the

period immediately following the entry of judgment.'" *Greene v. Town of Blooming Grove*, 935 F.2d 507, 512 (2d Cir. 1991) (quoting *White v. N.H. Dep't of Employment Sec.*, 455 U.S. 445, 450 (1982)).

FHWA and VTrans seek amendment of the Court's conclusion that construction of the A-B segment of the CCCH "may not proceed without . . . a Section 4(f)-compliant analysis of taking part of the McCrea farm."[1] They reiterate that FHWA has no intention of authorizing construction on any part of the highway that would implicate the taking of the McCrea farm without "additional environmental studies." They continue to maintain that the Court's order is premature, because the 2003 ROD did not authorize any further action with respect to those segments of the highway. But the issue was whether the 1986 FEIS itself was adequate; the Court concluded that it was not, and that consequently the FHWA could not legally adopt the 1986 FEIS pursuant to 40 C.F.R. § 1506.3. Am. Op. & Order at 26.

The 1986 FEIS was adopted in its entirety. The FREA for Segments A-B relied on the conclusion that the 1986 FEIS met the standards for an adequate statement. Although additional

---

[1] In context, the Court's ruling was framed in the alternative: "[c]onstruction may not proceed without . . . a Section 4(f)-compliant analysis of taking part of the McCrea farm or a decision not to adopt that portion of the 1986 FEIS that approves Segments G-J." Am. Op. & Order at 76 (Doc. 68).

unspecified environmental studies may well be undertaken before construction on future segments of the CCCH is authorized, and indeed Segments G-J may even be abandoned, adoption of the 1986 FEIS in 2003 will have foreclosed future challenge or review of the faulty § 4(f) analysis it contains.

The Court's order, in context, merely gave the Defendants an alternative: conduct a proper § 4(f) analysis to bring the 1986 FEIS into compliance, or disavow the portion of the FEIS that approves Segments G-J.  *National Wildlife Federation v. Goldschmidt*, 677 F.2d 259, 263 (2d Cir. 1982), cited by the Defendants as holding that an FEIS is not subject to review when an agency has recommended that a project be studied further, bears only a superficial resemblance to the situation here.  In that controversy over the construction of two sections of Interstate Highway 84 and a connecting route between Interstate Highways 84 and 86, the Connecticut Department of Transportation was required to prepare three EIS's for the three segments of the project.  Two of the three FEIS's were conditionally approved, pending supplementation of the FEIS's as to the environmental impact of the project on the state of Rhode Island.  The third FEIS, involving the interstate connector, was unconditionally approved.  National Wildlife Federation's lawsuit attacked both the conditional and unconditional approvals.  With regard to the conditional approvals, the district court held, and the Second

Circuit agreed, that there had been no final agency action to review.  *Id.* at 262, 264.  The Second Circuit panel stressed that the agency had stated flatly that no construction would occur in Connecticut without the approval of an EIS for the Rhode Island segment.  *Id.* at 264.

Here, by contrast, the FEIS was unconditionally approved.  The agency action was final.  Although FHWA has committed itself to undertake additional environmental studies before it selects an alternative for Segments G-J, there is no indication that the § 4(f) analysis will be subject to additional review, or that the additional studies will have the rigor required for an EIS or a § 4(f) analysis.  Unlike *National Wildlife v. Goldschmidt*, this issue will be foreclosed from challenge in the future.  *See id.* at 263 ("[w]e have been unable to detect any legal issue our decision will foreclose from challenge if and when a decision to build . . . is made.").

As Defendants have not shown any clear error of law or fact in the Court's ruling, their motion to alter or amend is denied with respect to this point.

FHWA and VTrans also contend that the Court committed factual and legal error in its analysis of cumulative and secondary impacts.  In particular they take issue with the Court's conclusion that "there has been no environmental analysis whatsoever, in the entire life of this project, of the cumulative

effect of the CCCH considered in conjunction with other past, present and reasonably foreseeable future actions." Am. Op. & Order at 73. The Court's conclusion was based on the following: 1) the 1986 FEIS did not contain a cumulative impacts analysis; 2) the FREA's induced growth analysis was limited to one aspect of induced growth--whether the CCCH will cause growth that would not have occurred without construction--and omitted any analysis of cumulative impacts (whether due to growth or related effects such as land use change or change to the ecosystem) in the study or in the FREA itself.

   The Defendants argue that their CCMPO traffic model included other road construction and improvement projects and that therefore they did consider cumulative impacts of the CCCH. This is an extraordinarily limited view of the requirement to consider the cumulative impacts on the environment of a proposed action. As the report makes clear, the model attempted to measure induced growth. For their purposes, the designers considered "cumulative impacts" merely as a component of induced growth, and stated *ipse dixit* that their induced growth analysis included both secondary and cumulative impacts. (AR 30003354.) *See also* Mot. to Alter at 11 (Doc. 91) ("FREA's induced growth analysis . . . by definition included the cumulative impacts analysis"). This is the only mention of cumulative impacts, as far as the Court can ascertain.

The Defendants rely upon *Piedmont Heights Civic Club, Inc. v. Moreland*, 637 F.2d 430 (5th Cir. 1981), for the proposition that although procedural requirements of NEPA must be met, an agency has satisfied the "statutory minima" with respect to cumulative effects if the underlying database includes approved projects and pending proposals. *Id.* at 441. With all respect to the Fifth Circuit Court of Appeals, this Court does not believe that this minimal standard will necessarily meet the requirement that an agency take a "hard look" at the environmental consequences of a proposed action. *See Stewart Park & Reserve Coal., Inc. (SPARC) v. Slater*, 352 F.3d 545, 557 (2d Cir. 2003). In this Circuit a court must ascertain that "'the agency has made an adequate compilation of relevant information, has analyzed it reasonably, has not ignored pertinent data, and has made disclosures to the public.'" *Id.* (quoting *Sierra Club v. U.S. Army Corps of Eng'rs*, 701 F.2d 1011, 1029 (2d Cir. 1983)). This Court was able to perform this task with respect to a portion of the induced growth analysis, and concluded that FHWA took the requisite "hard look." Am. Op. & Order at 69. It was not able to do so with respect to cumulative impacts, and so stated.[2] The

---

[2] *Piedmont Heights*' take on cumulative impact is cited with approval by the D.C. Circuit in *Coalition on Sensible Transportation, Inc. v. Dole*, 826 F.2d 60, 70 (D.C. Cir. 1987). In context it is clear that the Court there was concerned to avoid redundant analyses in successive EA's, FONSI's and EIS's, where the issues had been covered by prior environmental review. *Id.* at 71. Here, by contrast, any cumulative impacts analysis

motion to alter or amend is denied with respect to this point as well.

The Defendants strongly disagree with several of the Court's findings with respect to redirected or relocated growth pertaining to the outlying towns of Chittenden County, and with its conclusion that the relocated growth portion of its induced growth analysis was legally inadequate.  *See* Mot. to Alter at 17-18, 20-21.  The Court has carefully reviewed the objections.  The Defendants have pointed to no controlling decisions or data that the Court overlooked; that the Defendants disagree with the Court's findings is evident, but this disagreement has not altered the Court's view of the record or its conclusion.  *See Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).

Finally, the Defendants object to two of the Court's findings on secondary agricultural impacts.  An extensive study of the likely impact on agricultural lands from development induced by the CCCH was produced after the FEIS was released.  *See* 1987 Ag Land Study (AR 20014636-727).  Contrary to the FEIS's assumption that development of agricultural land would be controlled and limited by existing land use regulations, the Ag Land Study concluded that land use regulation alone would be ineffective in controlling the conversion of agricultural land.  (AR 20014687.)  The Court characterized this conclusion as "new

---

undertaken for the CCCH must be inferred.

7

information or [a] change in understanding." Am. Op. & Order at 72.  The Defendants, pointing to another quoted passage from the Ag Land Study, concerning the CCCH's accelerative effect on agricultural land conversion, object that this different passage was not new information, as of course it wasn't.  The new information or change in understanding was the recognition that zoning and other existing land use regulation would not be effective in limiting the conversion of agricultural lands under development pressure.

  The Defendants also make the somewhat startling statement that the Agencies did not believe that land use regulation would be effective in controlling secondary agricultural impacts, despite their stated assumption in the FEIS that it would.  (AR 20005001.)  Their citation to the Technical Report underlying the 1986 FEIS supports the contrary, however, mentioning local, regional and state land use controls, with no suggestion that their effectiveness was in doubt.  (AR 20003596.)  The Defendants also stress that when one of the Plaintiffs wrote to FHWA in 1989 with concerns that FHWA was failing to honor its commitment to mitigate secondary agricultural impacts, it alluded to the FEIS's statement that secondary impacts would be addressed through Act 250, Vermont's state land use regulatory process, and that the state transportation agency had commissioned an agricultural land study.  (AR 10004377-4379.)  Neither of these points contradicts

8

the Court's finding: that the 1986 FEIS assumed that land use regulation would effectively limit and control agricultural land conversion, and that the subsequent Ag Land Study concluded that land use regulation alone would not be effective.

The second objection is to the Court's conclusion that "[n]o meaningful assessment of secondary agricultural impacts has been publicly circulated and available for public comment, as far as the record shows."  Am. Op. & Order at 72.  The Defendants argue that secondary agricultural impacts were "considered" in the underlying technical reports, that the FEIS based its statements on those reports, and that VTrans allegedly committed to mitigation.[3]  Mot. to Alter at 24.  The Defendants also state that secondary agricultural impacts were addressed extensively in the public portions of the state Act 250 process.  That secondary agricultural impacts may have been publicly addressed in a state land use regulatory process post-EIS, or buried in a technical report, does not satisfy NEPA's requirement that accurate, high-quality "environmental information is available to public officials and citizens before decisions are made and before actions are taken."  40 C.F.R. § 1500.1(b); *see also Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 351-52 (1989) (EIS must contain detailed discussion of possible mitigation measures,

---

[3] That VTrans' commitment to mitigation had apparently evaporated by 1989 was the subject of the letter to FHWA cited by Defendants.  (AR 10004377-4379.)

9

and extent to which adverse effects can be avoided).

Defendants have shown no clear error of fact or law in the findings on secondary agricultural impacts, and their motion is denied on this point.

In its Amended Opinion and Order, the Court concluded that the environmental documentation for the construction of further segments of the CCCH was legally inadequate, based on an inadequate review of secondary and cumulative impacts, as well as a faulty Section 4(f) analysis.  The conclusions, regarding cumulative impacts, regarding relocated growth, and regarding secondary agricultural impacts, either individually or collectively warranted the ultimate conclusion that the agencies' FREA failed to comply with NEPA.

Based on the foregoing, Defendants' motion (Doc. 91) is denied.

Dated at Burlington, in the District of Vermont, this 20th day of July, 2006.

                                        /s/ William K. Sessions III
                                        William K. Sessions III
                                        Chief Judge
                                        United States District Court